And you can call the first case. Wheeler Financial, Inc. v. Law Bulletin Publishing Co. You can both step up, yes, and let us know who you are. Good morning, Your Honors. Greg Ostrad on behalf of Wheeler Financial, Inc. With me at counsel's table is Mr. Ian Barkow. Good morning, Your Honors. Michael Fawaz on behalf of the defendant, Apolli, Law Bulletin Publishing Co. And no one wanted to sit with me at counsel's table. That's cute. You both have 15 minutes. And, counsel, do you want to reserve a few minutes for rebuttal? If I may, Your Honor, I'd like to reserve three minutes for rebuttal. All right. That's fine. Whenever you're ready. And, again, speak up loudly so we can record you. Absolutely. Thank you. Thank you. May it please the Court, again, my name is Greg Ostrad. I'm here today representing the plaintiff and appellant, Wheeler Financial. This appeal really concerns when the concept of course of dealing will be permitted to imply an extraordinary exculpatory term into an otherwise ordinary publication contract. It is also, I would submit, an opportunity for this panel to clarify the three-decade law of Illinois since this Court's adoption of Section 223 of the Restatement of Second of Contracts regarding the law on course of dealing in Illinois. The underlying case here, of course, involves an error in the publication of a take notice, the result of which was that my client, Wheeler, lost a valuable property worth $1.2 million at the time of the failed taking. The underlying, I'm sorry, the source of that error was lawbrilliant. They did not publish the take notice in the form that was provided by Wheeler. It is undisputed that Wheeler provided an accurate take notice in a text file as directed by Law Bulletin. It is also undisputed that Wheeler, through its agent Midwest, paid the publication fee invoiced by Law Bulletin. It is further undisputed that the take notice that was published by Law Bulletin contained a different hearing date from the notice that was provided by Wheeler in its text file. But Law Bulletin asserted that as a result of a course of dealing between the parties, Wheeler undertook a gratuitous duty to scrutinize every take notice that it published with Law Bulletin in perpetuity, to correct Law Bulletin's errors, not just Wheeler's errors, but Law Bulletin's errors, and more than that, to esculpate Law Bulletin from liability for any errors it committed that Wheeler failed to catch in its review of the published notices. The circuit court allowed that course of dealing defense to go to the jury. We respectfully submit that that was error in a number of ways. It was error because the circuit court denied motions for summary judgment and directed verdict on liability, which should have been granted. It was error because the circuit court instructed the jury on course of dealing and then gave an erroneous instruction that does not reflect the law in Illinois on course of dealing. And it was an error in the admission of evidence pertaining to course of dealing. As I've probably hinted at in my argument, the focus of my argument today is going to be on course of dealing. We've also identified a number of other errors in our briefs, which for the most part, other than if opportunities present themselves, I plan to rest on my briefs for those other issues. So with the issue of course of dealing, what I'd really like to begin is with what the law is on course of dealing, because I don't think there should actually be much confusion on this, despite the level of ink that was spilled in the briefs on the subject. There's really no question. Illinois has adopted Section 223 of the Restatement Second of Contracts on course of dealing. This court made that clear three decades ago in the Wall v. Chicago Shippers case. And the circuit court essentially acknowledged this. The problem with what the circuit court did was it focused on Part 2 of Section 223 of the Restatement to the exclusion of Part 1. Part 2 deals with how course of dealing is used, whereas Part 1 defines what course of dealing is. Now, the circuit court focused on how it's used, and when it instructed the jury, it focused on instructing the jury how it could use course of dealing without ever telling the jury what course of dealing is. That's the focus of Section 1 of 223. And it defines course of dealing as a sequence of previous conduct, which may fairly be regarded as establishing a common basis of understanding between the parties. The way this court expressed it in the Wald case was that there must be a clear indication of the specific terms asserted by the party seeking to invoke course of dealing. So what is the term that Law Bulletin is asserting here? It is asserting that Wheeler, through Midwest, undertook an obligation to proofread all 317 take notices that were published in the June 5, 2013 issue of the Law Bulletin. Not only that, but a duty, in fact, to proofread all take notices published by Wheeler with Law Bulletin in perpetuity, and to find and identify Law Bulletin's errors, not just Wheeler's mistakes, not just correcting mistakes that Wheeler or Midwest introduced into the paper, but Law Bulletin's own errors, to bring those errors to Law Bulletin's attention. And more than that, a duty to exculpate Law Bulletin for its own errors, to the extent those errors went undetected by Wheeler. If you're looking at it, you're trying to, I think, argue that this would be on a reasonable contract term, developed through a course of dealing, but aren't parties free to negotiate and agree to whatever terms that they want to? I'm really making two arguments here, Your Honor, and thank you for the question. The first argument is that there is no course of dealing giving rise to the contract term that I've just described. That's the contract term that Law Bulletin asserted, but there was no course of dealing between the parties to suggest anything resembling that contract term. You're saying there was no evidence presented? I am saying there was no evidence presented, and that is why we assert it was error to deny summary judgment. As a matter of law, there was no evidence presented that could support the term that Law Bulletin contended on the basis of course of dealing. At most what there were were discrete instances where a former employee of Midwest, as an agent for Wheeler, did in fact identify certain specific errors and bring them to Law Bulletin's attention. What was missing from this was any instance where Law Bulletin had committed an error that caused Wheeler to lose a property. So that gets us into the particularity requirement of course of dealing. Course of dealing is only good insofar as the prior course of dealing provides sufficiently similar comparable in character circumstances that would enable the party to infer the term asserted. Well, if I'm understanding you, you mean because this never came up before during the party's course of dealing, it couldn't possibly be a term of the contract? Correct. Because it never came up before, course of dealing cannot create that as a contract term. Or wasn't there evidence that the... Ray, can you hear me? There was evidence presented that the Law Bulletin and Wheeler had this agreement, arrangement, and just because no other error beforehand popped up like that doesn't defeat that evidence, does it? I think the most that could be inferred from the evidence that was presented is that there were instances where Wheeler did review the publications and spotted errors. What's missing, the missing link here, is there is no evidence to suggest that Wheeler undertook this perpetual universal duty to review every take notice and to find and identify not just its own errors, which most of the instances involved its own errors. I think there was only one instance where it's determinable from the exhibits that Wheeler identified a Law Bulletin error. So there's nothing to suggest that it undertook a universal duty to review every take notice for these errors. There's also no evidence to suggest that it undertook anything resembling an obligation to exculpate Law Bulletin for its own errors in the event that it didn't catch the error. So Wheeler can look for its own errors, but while it's looking through everything, if they find a Law Bulletin error, they didn't have responsibility to report it or do anything about it? Well, what I'm suggesting, Your Honor, is that there's no evidence to suggest that Wheeler voluntarily undertook a duty to scrutinize every take notice to find Law Bulletin's errors and agreed to relieve Law Bulletin of liability for its errors in the event that somehow it failed to catch one. That essentially punishes Wheeler for choosing to be more diligent than it was required to be under the contract and looking for its own mistakes. And if it spied something from Law Bulletin advising Law Bulletin of them, it puts Wheeler in a worse position than if it had done nothing at all. I would suggest that that creates a perverse incentive, and it misuses the doctrine of course of dealing, because there's nothing in the course of dealing to suggest such an obligation. I'm trying to remember what the e-mail said, but wasn't there an e-mail from, I think, is it Gray, Jr.? The guy who's the president after his dad died, who basically said, we're going to continue to review these documents as we've done in the past. Wasn't that in one of his e-mails? The Law Bulletin has asserted that e-mail, Your Honor. And evidence that evidence was presented at trial over our objection. That error actually, that e-mail, actually occurred about a year after the breach in this case. It was a 2014 e-mail. Well, April, oh, I think it's April, yeah, that's my record. I think it was April of 2014. I may be all wrong on the month. But isn't it talking about what we've done in the past? It's not, Your Honor. What happened there, this is, and keep in mind, this is after Law Bulletin had made this big mistake that resulted in a property being lost. And what happened there was Miles Ahern of Law Bulletin sent an e-mail to Mr. Gray. This is David Gray at Midwest. And he raised two subjects in that e-mail. First of all, he said, we're putting into place a new processing procedure to avoid copying and pasting. And that's going to go into effect in a few weeks, and I'm happy to come over to your offices and show you how it works. So at that point, he's making a change, Law Bulletin is making a change in its procedures, you know, clearly to try to avoid the kind of mistake that happened in 2013. Then he says, and I quote, he says he's going to drop off a copy. Then he says, I ask that you verify that the notices ran correctly or make any necessary corrections. So here, having made this mistake in 2013, Law Bulletin is now making a specific ask of Mr. Gray that he review the published copy so that there is not a repeat of the previous errors. In response to that, Mr. Gray says, with respect to the new procedure, he says it sounds great. He says, for now, I assume you will do as you have in the past, i.e., there's going to continue to be cutting and pasting. Then, as to the request to review, he says, I will proofread the actual paper when it is run. He may have said when it is ran. So this clearly is an e-mail that is occurring in the wake of this terrible mistake where both parties are changing their practices to try and avoid a repeat of the error. I don't see how that can possibly be construed or how it could reasonably have been construed by the jury as evidence of the term that the plaintiff, excuse me, that Law Bulletin is asserting, much less as an agreement to exculpate Law Bulletin from liability for its own breach. And actually, Your Honor, getting back to your original question, I said I had two arguments. My second one was even if you could read this evidence as giving rise to this implied exculpatory clause, which we contend is not a viable creation under Illinois law because exculpatory clauses have to be clear and explicit. But put that aside for the moment. Let's say you could imply this exculpatory clause. The problem with that is then you have a situation where a contracting party is contracting to exculpate itself from liability for failing to perform the very promise that forms the basis for the contract. It is Blackwater law in Illinois under the Jewelers Mutual Insurance case by the Illinois Supreme Court in 2004. You can't do that. You can't agree to exculpate away the promise that forms the basis for the contract. Here there's no question. This was a contract to publish the take notice supplied by Wheeler to Law Bulletin. Law Bulletin's failure to publish the take notice that was provided to it by Wheeler is the essence of the contract. It can't exculpate itself away from that. It can't free itself from liability for failing to perform the promise that's the very basis for the contract. But the jury didn't decide it on a yes, the Law Bulletin made an error, but there was this exculpatory clause. They made a decision that the Law Bulletin was not liable because Wheeler did not fulfill its obligation. Correct. So it was being, that evidence was being read as the party's agreement that Law Bulletin would publish and Wheeler would review and let them know if there was an error. So how do we switch it to an exculpatory clause now? Well, I think the practical effect of it is that can only be read as an exculpatory clause. It's essentially saying if you don't review, then we are exculpated from liability. So I do think that's the legal effect of it, and that's why we're contending as a matter of law it never should have reached the jury. But I would like to talk about what happened with the jury as well, because in addition to the error that we contend with respect to the denial of summary judgment and directed verdicts, we also believe the jury was erroneously instructed here. And it was erroneously instructed in two ways. First is we believe there shouldn't have been a course of dealing instruction because we don't think there was competent evidence to support course of dealing. For the reasons I've just given. But let's put that aside, because, Your Honor, my sense is that you think there may have been sufficient evidence to support. Hypothetically, at least, that there may have been sufficient evidence. So supposing that to be the case, the instruction that was given by the trial court to the jury didn't really give it enough information to ascertain what the obligations were upon Wheeler. The instruction that the trial court gave to the jury was that it may, is that the previous course of dealing between the parties may give meaning to or qualify the contract. And that language was taken directly from the Wald case. So to that extent, the trial court got it about half right. It got Part 2 of Section 223 of the restatement. It instructed the jury on how course of dealing could be used. The problem was it omitted Part 1 of the restatement. It didn't instruct the jury on what course of dealing is. It didn't instruct the jury that course of dealing is a sequence of previous conduct that may fairly be regarded as establishing a common basis of understanding. This is a situation that is completely ripe for jury confusion. The jury has been told about a concept. It has been told you may look at the previous course of dealing, and you may use it to give meaning to or to qualify the contract. So that's the only instruction the jury has been given. But it's also been told about a number of prior practices. It's been told about this handbook that we contend shouldn't have been allowed into evidence. It's been shown these discrete instances where Mr. Dufkis did find instances, where he did find discrete errors and brought them to Rob Bolton's attention. So they know there has been some prior communications between the parties that at least abut or touch on the subject of the corruption of errors. They haven't been told that those prior dealings have to provide a common basis of understanding that there was, in fact, the term that they're asserting. In this instance, a term to review for Rob Bolton's errors. A term requiring the jury to, I'm sorry, a term requiring Wheeler and Midwest to go through every published notice, find not just their own errors but Rob Bolton's errors, and inform Rob Bolton of those errors. So that clearly impacted on the jury's verdict here. It affected the outcome. The jury found that Wheeler failed to perform its obligations under the contract, as Your Honor said. That was on the special verdict form. There's really only one possible basis for that finding, and that's course of dealing. Because the only other terms that were out there were providing the text file, which was unquestionably done, and paying the fee, which was unquestionably done. That means one way the jury could have found that Wheeler failed to fulfill its contractual obligations, and that way is to the extent that it did not, I'm sorry, that it did not proofread. So the jury inferred that the prior course of dealing gave rise to this duty to proofread, but it wasn't adequately instructed that there had to be a common basis for understanding the existence of this duty, and, in fact, the particular duty that Rob Bolton is asserting here, duty to review for law Bolton's own errors. That brings into play a number of other cases, and it also gets into our fourth error with respect to course of dealing, which is the erroneous admission of evidence. In order for course of dealing evidence to be relevant, it needs to be comparable in character. We've cited a number of authorities on this. I think the two Illinois authorities that are most on point are the Northern District of Illinois's ruling in the C&K trucking case and the maybe somewhat older decision from the Illinois Appellate Court, the Marcus v. S. S. Craig case. In both instances, the Court was fairly clear. If you're going to use course of dealing, the prior dealings you're pointing to have to be comparable in character. Here, as I've argued, there was nothing to suggest in the prior course of dealings that there was something comparable in character to a duty to review every take notice, to identify every error, not just by Wheeler but by law Bolton, and to bring those errors to law Bolton's attention. There's also a pretty significant factor that changed between Tuffe and early 2013 when Mr. Dufkus left Midwest and Mr. Gray took over his responsibilities, and this is another reason why this never should have reached the jury. It's clear from the April and May 2013 emails after Mr. Dufkus left that the prior course of dealing was no longer in effect. You had an email from Mr. Phelan saying, I have no idea what I'm doing, and you have an email from Mr. Gray saying Mr. Dufkus has left, we need instructions on what to do to publish notices. That gives pretty clear indication to law Bolton that the prior course of dealing, the institutional knowledge that accompanied the prior course of dealing left with Mr. Dufkus, and if they were asserting a duty to proofread, what they really needed to do was what Mr. Ahern did in 2014 and say, you know, give us the text file, pay the fee, we'll drop off a copy of the paper, you need to review it and let us know if there's any mistakes. You know, absent of that, the course of dealing was cut off, and it's perfectly clear as a matter of law the course of dealing can be cut off, that it can be dropped at any time. The evidence on this was undisputed, and it did not allow a genuine issue of material fact as to the course of dealing. Having a few minutes remaining, I also want to touch on this issue of proximate cause and the tax proceedings, because I think what's really going on here is there's an attempt on the part of law Bolton to create some new Illinois law on breach of contract. They're essentially seeking to replace the concept of traditional causation and damages in a breach of contract case with the concept of sole causation. They're saying unless our breach was the sole cause of your damages, we're not liable for your injury. Here they're saying even if we performed our contractual duties, because the sheriff didn't serve by certified mail, and you didn't double check to make sure the sheriff served by certified mail, we can't be held liable. Well, that's not what the law is in Illinois, and it's for a very good reason. I've constructed a hypothetical to try to help illustrate this. Let's say I own a theater, and I want to implement a new state-of-the-art ticketing system. So I hire a hardware engineer and a software engineer to design my system. Two separate contracts, one for the hardware, one for the software. They both breach. I'm left without my state-of-the-art ticketing system. So by law Bolton's reasoning, if I serve a hardware engineer, he can say, well, sure, I breached, but even if I performed my contract, the software engineer didn't perform his, so you still wouldn't have had your state-of-the-art ticketing system. You haven't suffered any damages caused by my breach. And the software engineer could say the same thing about the hardware engineer. So by law Bolton's reasoning, by the fortuitous coincidence that there is a separate breaching party out there, they're saying both breaching parties are off the hook, and the innocent party, the non-breaching party, the performing party, is left holding the bag and is left with no ability to recover its damages. That's not the law in Illinois. The Illinois law is perfectly clear. The measures of damages for breach of contract are direct and consequential damages, that is, damages which are a natural and general result of the breach, or damages that are a direct and foreseeable consequence of the breach. Here it is perfectly clear when law Bolton breached its duty, when it published the wrong notice, it became impossible at that point for Wheeler to recover its property. The fact that, as law Bolton contends, there was some other party out there that also breached a separate duty for which law Bolton was not responsible doesn't offer it with a fortuitous coincidence to get itself off the hook for breach of contract. It's still liable. That's essentially the basis for our position that these were entirely collateral proceedings. None of this issue about what defenses law Bolton would have raised if it had been allowed in the tax court should come into play here because those are collateral proceedings. They have nothing to do with law Bolton's breach. They have nothing to do with the damages we incurred as a foreseeable consequence of law Bolton's action. There was a separate judge who adjudicated those proceedings. He entered an order. That was the conclusion of the matter. The fact that law Bolton, had it been a party in those proceedings, would have tried to raise additional defenses is really collateral to and irrelevant to the case. Additionally, Your Honor, I certainly disagree with their view that the trial court could only have found, as a matter of law, that it was impossible for us to prove that the service was made in accordance with the tax statute. There was ample testimony to support that in the conclusion that service was made. David Gray testified that he provided the appropriate directions to the sheriff. The sheriff's representative, Colin Luce, testified that the sheriff's office doesn't wait for additional instructions or requests to send the certified mail. They just send it because that's what the statute required. There was no dispute that the owner, in fact, had actual notice. He hired an attorney, Mr. Cummins, who showed up and defended him successfully in the case. So I really think that's very much a collateral and side issue that shouldn't come into this case. I think what's really happening here, the trial court's decision below really did rewrite the law on contract in Illinois in two significant ways. It rewrote the law on course of dealing by leaving out the definition of what course of dealing is. And it rewrote the law on causation by allowing this concept of sole causation to come into play and allowing the contracting party to argue that it should be let off the hook for its breach as a result of an unrelated breach. What we're really looking here for here is a level playing field. We contend that the course of dealing issue should never have gone to the jury. And as a consequence, this case should be remanded for entry of summary judgment in favor, at least on liability, and now because the damage as evidence of trial was undisputed, entry of a directive verdict in favor of Wheeler on both liability and damages. That failing, even if there was sufficient cause to allow the course of dealing defense to go to the jury, the jury at least needed to be properly instructed on it. It needed to know what course of dealing is so that it could competently look at the evidence without risk of confusion and could determine for itself whether or not the evidence here amounted to a common basis for understanding. It's really extraordinary duty to review the other party's performance to make sure they performed in accordance with the terms of the contract. The really extraordinary duty on the part of Wheeler to make itself worse off than if it had done nothing at all. So that's what we're asking for is that level playing field. If there are no further questions, I'll reserve my remaining time. Thank you. Thank you, Your Honors.  Again, Michael Falaz on behalf of the Defendant Appellee Law Bulletin Publishing Company. Your Honors, we're asking the Court to affirm the judgment of the trial court for two reasons. First, Wheeler was never entitled to summary judgment or a directed verdict, given the overwhelming questions of fact dealing with contract formation, contract terms, and causation. Additionally, many of the arguments presented to you today dealt with the admission of evidence subject to the highly deferential abuse of discretion standard, which Wheeler doesn't even come close to satisfying on appeal. Now, in the alternative in our brief, we argued that should the Court find error in any of the grounds raised by Wheeler, there are alternative reasons to affirm the judgment presented by the law bulletin. I rarely address those today. They were fully briefed, unless there are questions, of course. They were fully briefed. Wheeler's response to those in its reply brief was about a page. So I think those issues are presented and are available for the Court as alternatives, should the Court decide to reach them. I'd like to start with the course of dealing, since that's where our counsel started and the Court had some questions. And what I find striking is there's a theme to this appeal and to Wheeler's issues before the trial court. Pleadings don't exist. You initiate the complaint. You choose the theory. You choose the claims you want to raise. Everything presented in this case, all of the evidence the trial court allowed, was raised by the opening pleading and then by the affirmative defenses in response. Take the complaint as it relates to this issue of course of dealing. Wheeler asserted every type of contract available under Illinois law but one, a written contract. The contract was oral. If it wasn't oral, it was implied. On at least four occasions, Wheeler specifically referenced the party's course of dealing, even stating that the course of dealing and communications established relationship and expectations. That was what was before the trial court. Those were the issues presented by Wheeler's own complaint. And this Court held in 2003 in the Colano v. Bontowsky case, the issue in any litigation are determined by the pleadings and an issue cannot be sustained by evidence absent a corresponding pleading. He cannot make one case by his affirmance and have judgment entered on another and on a different ground. That's what they're trying to do. That's what they tried to do. Never sought an amendment to the complaint, never even sought to conform evidence to proof, not that that would have done anything, but they're trying to change their pleading on appeal. Now, the course of dealing issue. First it was brought up in the pleadings. The law is clear that it is up to the jury to determine what the party's contract is when there are the disputes that you see before you today. Contract law is clear that when an agreement is indefinite, as is the case with all contracts, the courts will look and adopt an interpretation which the parties themselves have placed upon that contract. And that includes the party's acts and conduct. Yes, Midwest, on behalf of Wheeler, assumed responsibility for reviewing the actual published paper and bringing any errors to the attention of the law bulletin. Now, Justice Rockford, you asked an interesting question, and it was part of my argument, so I'll address it anyway, but parties are free to contract to whatever terms they want as long as they are not against public policy. The law bulletin could have said to Midwest and Wheeler, you are responsible for reviewing every one of our papers and check to take notices, and if you don't and there are errors, you're at fault. And if Wheeler and Midwest accepted that proposition, it is part of their relationship. But that's not what happened here. Midwest assumed that responsibility. It wasn't thrust upon it, and there's a reason for it. So, Your Honors, the property tax code is set up in such a way as to encourage property owners to redeem delinquent tax liens. They are given a long redemption period. They are encouraged to redeem. Companies like Wheeler seeking to sweep up property have to jump through a number of hoops, but every hoop costs a lot of money. In an effort to save on costs, Wheeler would wait until the very end of the notice-serving period and then begin trying to comply with the various steps under the property tax code. Take the Winchester property that was at issue in this case. The deadline was June 13th. Well, I don't know if we want to, you know, they still came to you for the service, and you gave them the service, whether they came to you late or early in the process, I don't know if it's really relevant. The only reason it's relevant, Your Honor, is it explains why Midwest would assume the responsibility of reviewing the actual published paper. Because it was so late in the process, it was important that everything was done right, because if you missed the notice-serving requirement, there's a first district court case, I think, where they missed it by one day, the sheriff's notice, and the court said, too bad, it's one day, yes, you served it, but the law is the law, strict compliance is required. So that's why they assumed that responsibility. And this was confirmed by the various emails discussed. Now, one of the emails you raised, Justice Lamkin, was an email from David Gray in April of 2014. I want to correct one thing counsel said. It was a stipulated exhibit. It's Exhibit 41. So it was stipulated into evidence. But there were also stipulated Exhibits 3, 4, 5, 6, 9, 11, 12, 15. These emails go back all the way to 2008 through, I think it was February of 2013. Five plus years in which the same thing happened every single time. Notices were sent to the law bulletin. The law bulletin would publish. Midwest paralegals and lawyers would review the actual published paper, which was hand-delivered to Midwest. Mr. Desnoyers testified, and I find this striking. Well, why did you do that? Well, they asked me to. Did you hand-deliver the paper to anybody else? No, this was the only client who insisted upon a delivery of the first day's publication of the paper. But why? It was a Midwest policy handbook. It was promulgated in 2002, amended in 2008, still in effect in 2013. That was their internal procedure. They operated by that internal procedure, and then externally operated that way with the law bulletin. And as I said, Exhibit 9 was particularly striking. It was raised by counsel. Because they were looking not only for Midwest and Wheeler's errors, they were looking at law bulletin's errors. And that exhibit highlights errors made by both parties in various take notices. That's Defense Exhibit 9. What transpired in June of 2013 was no different than had been going on between the parties for years, with one significant change. On that day, Desnoyers got up, took the published paper, walked it over to the LaSalle office chaired by Midwest and Wheeler. He asked for David Gray. He met David Gray for the first time, shook his hand and handed him a copy of the paper, as he had done with Midwest for years. There was one difference this time. No one at Midwest reviewed the paper, unbeknownst to the law bulletin. Midwest had lost most of its staff. Yes, we were aware that Mr. Dufkus had left, but we didn't know all the paralegals or most of the paralegals had been fired or let go, that most of the attorneys had been fired or let go. That's why they didn't perform their part of the obligation in this instance. It was their own internal issues. Now, another argument raised was, well, once Mr. Dufkus left, it changed the entire relationship. It did not, Your Honors, and there are two problems with that argument. One is practical. The relationship, the contract was not between, with law bulletin Mr. Dufkus. It was with a company, Midwest and Wheeler. Imagine, imagine the practical impact on contract law if a company can enter into a contract and task one or two employees with effectuating that contract. And if those employees leave, a company can say, contract, we don't know what's going on. If a company wanted to be nefarious and escape its contractual obligation, just fire the two employees who handled that contract. Then you can just disclaim any knowledge of your contractual obligation. That's not the law for a reason. Yes, parties are not forever bound by their contracts. Yes, parties may change any contract, written, oral, course of conduct, but there must be mutual assent. There must be a demonstration that they intend to change what they have done for years. That didn't happen here. You had one party who simply failed to perform as it had for a number of years. And there's a legal problem with their argument as well about Mr. Dufkus leaving. David Gray testified in the record, this is on page 394 of the record, when Mr. Dufkus left, quote, he was responsible for everything that Mr. Dufkus had been responsible for. That admission by a principal of the company cannot be ignored. And, Justice Lankin, as you referred to the 2014 emails, again, talking about how I will do them as we have in the past and I or my team will proofread the actual paper when it's ran. Counsel gave a long explanation of what that email means. Counsel's explanation isn't evidence. The email is evidence. That was before the jury. Mr. Gray tried to explain that email. That was before the jury. And the jury reached its verdict. In fact, what's telling is the explanation I just gave to the court about the meaning of that email, simply him acknowledging that previous course of conduct was stated in defense closing argument. The plaintiff had an opportunity for a rebuttal closing argument, which it waived. It could have given that explanation or tried to put that email in that context in trial. It didn't do that. Now, the next argument on course of dealing, final argument, I do want to make one important point. Whether evidence of course of dealing should have been admitted is a question on the admissibility of evidence, subject to the abuse of discretion standard. And it's hard to say that there was no basis for the trial court's decision or that no one could agree with the trial court's reasoning, which is the standard for an abuse of discretion. Now, as to the jury instruction. As to the course of dealing instruction, there is no standard instruction. So the trial court had before it a number of cases and did independent research. This is all evident in the record. It allowed the parties to argue for 30 or 40 pages of transcripts on the issue. And one of the things that Wheeler insisted upon in the instruction was that there has to be language that you can't modify expressed written terms. And I wasn't at trial. I wasn't involved. So I'm looking at the transcripts and I'm actually quite impressed with what the trial judge did. Because you're all raising some interesting arguments. But it's always helpful to go to the pleadings and figure out what is at issue in this case. Wheeler, you said there's every type of contract but a written one. You have an oral contract. You have a contract that you say is implied. There's a reason we have a formation issue in this case. There's a reason we can't agree on the terms. You folks are here for trial because there is no written contract. Otherwise it would be a much simpler case. So she said course of dealing has to come in. Looking at the various cases available, since there is no standard instruction, on the record acknowledge she must give a fair instruction that doesn't tip the scale and that informs the jury on the law. And the instruction given is in compliance with all of those principles. In fact, the instruction doesn't require the jury to rely on course of dealing or tell the jury it must consider course of dealing. It says a previous course of dealing may give meaning to or qualify an agreement. That comes right out of the H&H Axelrod case. Where the terms of a contract are doubtful and uncertain, clearly the issue in this case, and the parties to it have by their own conduct, their conduct, looking at what the parties mutually were doing, placed a construction upon it which is reasonable. Such construction may be considered by you. And the jury's verdict tells us that they considered this instruction, they considered all of the evidence before it, and reached a verdict. Now, it's telling that in its directed verdict, Wheeler accepts the jury's finding that there was a contract. It quarrels with the jury's conclusion that Wheeler did not perform under the contract. But there's a problem. The Illinois Supreme Court Dillon case tells us if you don't ask for a special interrogatory on an ultimate issue of fact like this, the jury is presumed to have accepted the prevailing party's theory of the case. And the court goes even further, I find it striking, and the losing party cannot complain about the verdict. That is what we have in this case. Now, Counselor Breyer, I'm sorry. If I understand Wheeler's argument as the instruction, that it doesn't explicitly tell the jury that the course of conduct has to be built on a common basis of fact. Is that missing from this instruction? It's not missing, Your Honor, if you consider the actual language used. Because the law doesn't say the court is required when it's a non-IPI instruction. There is not some standard. It would be ideal if there had been some case that had blessed a certain instruction. There wasn't. So what the judge did in this language were the terms of a contract are doubtful or uncertain, and the parties to it have by their own conduct. That is the common, I mean, Your Honor, it's just another way of saying the common basis of understanding because it's forcing the jury to consider not what one party did or what the other party did or one party unilaterally thought or the other party. It's telling the jury you must consider the joint comments, acts, conduct of the parties. And how they operated together. That is the common basis of understanding. So those buzz words were not used, but the instruction conveyed that exact sentiment. That is not error. Now, as to the tax deed case, Your Honor, which counsel raised, the suggestion that the law bulletin is trying to create new law or any of that, it's, respectfully, it's nonsense. In a contract case, the trial court, again, I found this sort of fascinating. The trial just said, look, I've done a lot of research on this. There is a difference between contract causation and tort causation, acknowledging that difference. But one of the elements you must prove in a contract case is that the defendant's breach caused your damages, plaintiff. And what she highlighted was the case law that says an injured party in a contract case is not allowed to be placed in a better position than he or she would have been in had the contract been performed. And the point of the tax deed evidence, again, placed into evidence by the complaint itself, paragraph 44. Because of law bulletin's failure to publish as agreed, Wheeler lost the ability to acquire the Winchester property that it otherwise would have been able to acquire and resell. Well, if it otherwise would not have been able to acquire and resell it, how could it ever seek $1.2 million in damages from the law bulletin? That was the key issue with the tax deed case. And what the evidence showed is that even in its tax deed application, Wheeler could not provide any evidence of service by the sheriff, which is a mandatory requirement under the property tax code. And our point was that that would be fatal to its claim, even if the publication had been perfect. And, again, this is... That's more of a damages issue, which the jury really didn't get to. It didn't even reach it in this case. Correct. Once they found that Wheeler failed to perform, the jury didn't reach it. And, in fact, that's one of the alternative arguments in our case, that the evidence was so overwhelming that there was no evidence of a sheriff's service that it provides an alternative reason to affirm the judgment on that basis. And that's the $1.2 million for the Winchester property. And I do want to point out a couple of important points here. That even in allowing the tax deed evidence, the trial judge restricted it severely over the law bulletin's objection. It limited it to just showing that Wheeler didn't comply with the tax code provisions. It wouldn't allow a collateral attack on the order. So the trial judge struck the right balance. And, again, one cannot say that she abused her discretion. And, finally, as to the movie theater scenario counsel presented today, there's a bit of a difference between that case and this case. The burden in a property tax dispute is on the one seeking the tax deed to establish compliance, strip compliance is the language of this court, in every aspect of the statute. So the reason that here Wheeler couldn't sue anybody else is because the other party to sue would be Wheeler. Wheeler would have to sue itself because it failed to comply with the property tax code. Whereas in the hardware software example, if both parties breached their agreement, Wheeler can sue both parties and recover damages as appropriate in that case. That's not what we have in this case. So looking at all of the evidence, Your Honor, what we see is really a common theme. Pleadings don't matter. Let's ignore our opening complaint that we never amended. We said it's an oral contract. We said the tax deed's at issue. Thank you. Counsel, you can have a few more minutes if you want to in rebuttal because we gave counsel a little more time. Thank you, Your Honor. I will be brief. I want to begin with this issue, the straw man notion that pleadings don't matter or that pleadings don't exist. That is certainly not the position we have ever taken at the trial court level or in this appeal. Certainly, pleadings matter. Certainly, pleadings exist. The theory that we asserted below in our pleadings was that there was a 2013 contract to publish the Winchester take notice and that that contract was breached. But to some degree, this whole notion of whether there was a single contract that extended back over 15 years or whether there was more like a credit card situation where you have a series of individual publication contracts is itself a distraction. The real question here is not whether there was a contract to publish or not. It's undisputed there was a contract to publish. The question is also not whether or not there was a course of dealing between the parties. Of course, there was a course of dealing between the parties. The question is what obligations can you infer from the course of dealings between the parties. And what Law Bolton is trying to infer is an incredibly broad and contra policy obligation on the part of the contracting party to scrutinize the other party's performance for errors and then let the other party know where they have erred in their performance and failing to do that, exculpating the other party from liability for its failure to perform. That's not contrary to our pleadings, Your Honor. That is the theory in our pleadings is that Law Bolton is asserting a duty that simply doesn't exist. It's a duty that cannot be inferred from the evidence because there is no evidence of a common basis of understanding on the part of Wheeler or on the part of its agents Midwest to scrutinize every single take notice that published with Law Bolton. And most significantly, I think this is the distinction that counsel really didn't address, the obligation to scrutinize for Law Bolton's errors. In all the exhibits that he made, in all of the stipulated exhibits that were put into evidence, there was a single email that referenced an error by Law Bolton for which Law Bolton apologized. Based on that single email and the fact that there were other emails related to other errors, the source of which were not identified, Law Bolton is seeking to infer an obligation, a global obligation, a perpetual obligation to scrutinize every take notice that Wheeler published in Law Bolton and to let Law Bolton know when Law Bolton had committed an error and an obligation on the part of Wheeler to exculpate Law Bolton if it failed to identify those errors. That is simply not identifiable in the evidence. It is not identifiable as a matter of law. And if that contract, if that exculpation clause could be inferred, we cited in the Jewelers case. I don't think I heard any response to that in counsel's argument. The Jewelers insurance case makes perfectly clear the contracting party cannot exculpate or exonerate itself from liability for the performance of a promise underlying the contract. I addressed that in my preceding argument. Another significant issue that I feel like counsel didn't really address was the subject of the course of dealing instruction. I heard counsel say that the instruction that was given, well, there should, there was, so the instruction that was given captured the concept of a common basis for understanding. What's interesting is the language he cited as capturing that concept is the notion that you can infer course of dealing from the party's prior conduct, but that's not the common basis of understanding language. What the restatement says is there has to be a previous sequence of conduct that can fairly be characterized as establishing a common basis for understanding. Previous conduct itself isn't enough. Those words, common basis of understanding, are critical. How is the jury supposed to accurately understand, comprehend, and convey the notion of course of dealing and make a judgment on the issue of course of dealing when it hasn't been instructed that a course of dealing requires a common basis for understanding? Counsel cited the Dillon v. Evanston Hospital case. That is an important case because it is quite clear what is required in a jury instruction. The function of the instructions are to convey to the jury the correct principles of law applicable to the submitted evidence, and the jury instructions must state the law fairly and distinctly and must not mislead the jury or prejudice a party. I certainly agree there was no nonstandard instruction on course of dealing, but that doesn't mean that you're free to disregard what the law is on course of dealing. What the law is on course of dealing is the law as set forth in Section 223 of the restatement. That's a short restatement section. It contains two short sentences. It would have been very easy for the trial court to instruct the jury on the complete state of the law, and it didn't. Instead, it instructed the jury on the second part of Section 223 and not on the first part, leaving an inexpert jury. Juries are not, of course, trained to deal in legal issues, so when the jury is not adequately instructed on the law, that is a de novo review, and if the jury is not adequately instructed on the law, it is presumed to have affected the outcome of the case and it has to be remanded for a new trial. That's what the dealing case establishes. The issue that counsel dealt with, the issue of the express written terms respectively, that's not the part of the jury instruction we're talking about on appeal. The part of the absent jury instruction that we're concerned with is the absence of the common basis of understanding. Ginsburg. Counsel, can you just – I know you're going to finish in a second, but read me your jury instruction, the one that you submitted. I'm trying to recall. I think that jury instruction, I believe the judge may have read that instruction into the – okay. Here, the court read – what I'm reading from is page 1027 of the transcript of the record. The judge read in what Plinkett's proposed course of dealing instruction was, and what he read was, a prior course of dealing may not be used to contradict or modify a contract's express or written terms. A prior course of dealing applies only when the party's conduct establishes a common basis of understanding of the agreement between them. A party's unilateral understanding or belief of the agreement does not establish a course of dealing. If the expressed or written term of the contract and the offered course of dealing cannot be reconciled, then the expressed or written term will control. A course of dealing, if applicable, may only be used to supplement or qualify existing terms. And we cited in that case – and the judge notes what we cited, too. So the express written part, we're not necessarily continuing to judge error in leaving that part out, but leaving out the – I think there was something in it that clearly should have been in it. There was a section where you can't contradict expressed or written terms. This is an oral contract. It's an oral contract that's partially defined by written documents, so I think this is actually a bit of a close case. But at the end of the day, the instruction that went to the jury was essentially what's in the restatement. If you left out the stuff on written terms and you simply instructed the jury on what course of dealing is, we believe that would have gotten us a lot closer to an adequate jury instruction, assuming, of course, that the instruction should have been given. And we're not abandoning the argument that it shouldn't have been given because, as a matter of law, there wasn't enough evidence to support course of dealing. I'll wrap up. You didn't raise the restatement in your epilogue. I'm sorry? I don't see any reference to the restatement. We did, Your Honor. We cited it in a broad case. So, Your Honor, I think the problem here is we actually cited the restatement in two sections. We cited to it. I'm looking in the instructions. So if you look at Section 3B on page 31, we cite to the restatement there. We cite to comment B of the restatement. We also cite, I believe it's on page 22 of our brief. But that's not in the instruction, I believe. Oh, in our instruction to the jury? I think we cite it to cases citing the restatement. I don't know that we know. We cite it to the ROW case and the H&H case. We cited cases that were citing the language from the restatement. I don't recall if in our jury instruction if we actually cited the restatement itself because there was ample case law that it adopted the restatement formulation of common basis of understanding. And that is, you know, knowledge repeated in numerous Illinois cases as well as in the restatement itself. So to wrap up, Your Honor, I think what this case really comes down to in some ways is a policy question, which is who is to be held responsible for a party's error in the performance of a contract? Here there's no question. Law Bulletin was the party that committed the error. Law Bulletin didn't publish the take notice that was provided to it. And there were serious consequences from that. A $1.2 million property was lost. Law Bulletin now wants to be exonerated from that, not because of anything it did, but because of something it contends we failed to do. As a matter of policy, we don't think that's a viable position. Even if it were, the quantum of proof that would be required for a jury to infer that we undertook such an extraordinary obligation should be high, and the jury should be properly instructed before imposing such an obligation on us to relieve another contracting party of its errors, of having to search for its own errors and having to check its own errors to ensure that it had performed its promises under the contract adequately. Here we think that quantum wasn't met. The trial court committed errors in instructing the jury on that issue, and the case should at a minimum be remanded for a new trial, if not remanded for entry of a directed verdict in our favor. I thank the Court for its time. Thank you. Thank you. Thank you all. We will certainly take the case under advisement.